UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VONIOR EVANS AND WANDA BRYANT,** | § | |
| **INDIVIDUALLY AND AS** | § | |
| **PARENTS OF MARIO EVANS,** | § | |
| **DECEASED** | § | |
| | § | |
| **PLAINTIFFS,** | § | **CA NO. _____** |
| | § | |
| **V.** | § | |
| | § | |
| | § | |
| **THE CITY OF DALLAS, CITY OF** | § | |
| **DALLAS FIRE-RESCUE DEPARTMENT** | § | |
| **D/B/A CITY OF DALLAS EMERGENCY** | § | |
| **AMBULANCE SERVICE, BIOTEL, INC. ,** | § | |
| **JAMES PETER FLORES,** | § | |
| **KELLY BRENDAN SWINDLE AND** | § | |
| **PARKLAND MEMORIAL HOSPITAL** | § | |
| | § | |
| **DEFENDANTS** | § | |

## <u>PLAINTIFFS ORIGINAL COMPLAINT</u>

COMES NOW, PLAINTIFFS VONIOR EVANS AND WANDA BRYANT, (hereinafter called "Plaintiffs") INDIVIDUALLY AND AS PARENTS OF MARIO EVANS, DECEASED (hereinafter called "Deceased") and files this Plaintiffs Original Complaint ("Complaint") complaining of Defendants, the City of Dallas (hereinafter called "Dallas" or "the City"), BioTel, Inc., City of Dallas Fire-Rescue Department (hereinafter called "Dallas EMS" or

Plaintiffs Original Complaint            Page 1

"DFR"), James Peter Flores (License Number 702126) (hereinafter called "Flores"), Kelly Brendan Swindle (License Number 160002) (hereinafter called "Swindle") and Parkland Memorial Hospital (hereinafter called "Hospital").

## I.
## PARTIES

1.      Plaintiffs are individuals currently residing in Dallas County, Dallas, Texas and South Milwaukee, Wisconsin.

2.      Defendant, City of Dallas is a municipal corporation and political subdivision located in the State of Texas, which may be served with process by serving the City Secretary, Rosa Rios, Dallas City Hall, 1500 Marilla Street, Room 5D South, Dallas, TX 75201 and Assistant City Attorney James C. Butt, 1500 Marilla Street, Room 7DN, Dallas, TX 75201. **Issuance of Citation is respectfully requested at this time**.

3.      Defendant, BioTel, Inc., is a Texas Company which may be served with process by serving LuAnn McKee at 5200 Harry Hines Blvd, Room 01340, Dallas, TX 75235, **Issuance of Citation is respectfully requested at this time.**

4.      Defendant, City of Dallas Fire-Rescue Department d/b/a City of Dallas Emergency Ambulance Service, is a department of the City of Dallas that provides emergency medical services in Dallas County through its Emergency Medical Services Division.  It may be served with process through service upon its administrative head, at the Dallas City Fire Administration, located at 1500 Marilla Street #7A, Dallas TX 75201. **Issuance of Citation is respectfully requested at this time.**

**5.**        Defendant, James Peter Flores, an employee of City of Dallas Fire-Rescue, a

Licensed Paramedic, who may be served at 1500 Marilla Street #7A, Dallas, TX  75201.

**Issuance of Citation is respectfully requested at this time.**

6.        Defendant, Kelly Brendan Swindle, an employee of the City of Dallas Fire-

Rescue, a Licensed Paramedic, who may be served at 1500 Marilla Street #7A, Dallas,

TX  75201.  **Issuance of Citation is respectfully requested at this time.**

7.        Defendant, Parkland Memorial Hospital also known as Parkland Health &

Hospital System, Auxiliary is a Texas Company that may be served with process by

serving its registered agent, Paul S. Leslie, located at 5201 Harry Hines Blvd., Dallas, TX

75235.  **Issuance of citation is requested at this time.**

**II.**
**JURISDICTION AND VENUE**

8.        The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, as this

lawsuit arises under the Constitution, laws, or treaties of the United States.   Additionally,

the Court has supplemental jurisdiction of Plaintiffs' state law claims under 28 U.S.C. §

1367(a).

9.        Venue is proper in this Court under 28 U.S.C. § 1391(b), as this is the judicial

district in which a substantial part of the events or omissions giving rise to the claims

occurred.

**III.**
**INTRODUCTION**

10.     This is an action for money damages brought pursuant to 42 U.S.C. § 1983 for the

violations of civil rights and privileges guaranteed Plaintiff by the United States

Constitution and under the common law of the State of Texas.

**IV.**
**FACTS**

11.     On or about February 28, 2014, Mario Evans, Deceased, his two brothers and a

friend all arrived together at the Cowboy Lounge, located at 3639 Colonial Avenue,

Dallas, TX.  It is known that the Deceased consumed alcohol, smoked marijuana and

sniffed cocaine.

12.     After the midnight hour, now March 1, 2014, Mario Evans' behavior became

erratic.  Mr. Evans jumped on stage and started to shout, sing, and eventually took his

clothes off. While onstage, Mr. Evans became uncontrollable and refused to leave the

establishment.

13.     Eventually, Mr. Evans either jumped or fell off the stage and got into an

altercation with several patrons of Cowboy Lounge.    Emergency 911 was called and

Dallas Police Department responded.

14.     When Dallas Police Department arrived, they witnessed Mr. Evans on the floor,

naked, sweating profusely and rolling around.

15.     Mr. Evans refused to comply with Dallas Police Officers and became physically

aggressive. Mr. Evans was eventually tased in order for officers to physically control the

situation.   The taser had no effect on Mr. Evans as he demonstrated strength and resisted several officers.

16.      Mr. Evans was eventually taken down by several officers and handcuffed.   Two pairs of joined handcuffs were used to restrain Mr. Evans as he layed on the floor.

17.      City of Dallas Fire-Rescue Department arrived on the scene.  DFR evaluated Mr. Evans, who was still combative, sweating profusely and in an excited delirium state.

18.      DFR administered no medical attention to Mr. Evans while at the Cowboy Lounge.

19.      Flores and Swindle, along with the help of Dallas Police Officers, put Mr. Evans on the gurney face down or in the prone position.

20.      Both Flores and Swindle then strap Mr. Evans to the gurney while Mr. Evans was in the prone position.

21.      Flores, Swindle, along with the help of Dallas Police Officers, lifted Mr. Evans, while being strapped to the gurney in the prone position, and loaded him into the ambulance.

22.      Officer B. Stephens and Officer S. Browning accompanied Flores in the back of the ambulance, while Swindle drove the emergency vehicle to Parkland Memorial Hospital.

23.      While in route to Parkland Memorial Hospital, Mr. Evans stopped breathing.

24.      Flores noticed that Mr. Evans was limp and no longer breathing and asked both officers for assistance with CPR.

25.        Officer B. Stephens, Officer S. Browning and Flores had to remove the straps

being used to restrain Mr. Evans to the gurney while Mr. Evans was still in the prone

position before they could start CPR.

26.        Once the straps were removed they attempted to turn Mr. Evans, all the while

critical minutes were passing and Mr. Evans was no longer breathing

27.        Eventually Officer B. Stephens, Officer S. Browning and Flores started CPR.

28.        Mr. Evans died in transport to Parkland Memorial Hospital.

29.        Once at Parkland Memorial Hospital several physicians and nurses of the

emergency room worked on Mr. Evans until 11:25 A.M.

30.        Mr. Evans died at 11:24 A.M. on March 1, 2014.

31.        While at Parkland Memorial Hospital Mr. Evans' body was severely mutilated for

unknown reasons.   Incisions were made where no incisions should have been.  There has

been no explanation from Parkland Memorial Hospital as to the reason Mr. Evans' body

was cut in the manner it was.

**V.**
**CAUSE OF ACTION AGAIST DEFENDANTS:   VIOLATION OF**
**PLAINTIFF'S 14TH AMENDMENT RIGHTS PURSUANT TO**
**SECTION 1983 – DENIAL OF MEDICAL TREATMENT**

32.        Plaintiffs plead a cause of action against Defendants for violations of Plaintiff's

Fourteenth Amendment Right guaranteeing substantive and procedural due process

pursuant to 42 U.S.C. § 1983.  The allegations contained in all of the paragraphs of this

Complaint are hereby reaverred and realleged, for all purposes, and incorporated herein

with the same force and effect as if set forth verbatim herein.

33.        Municipal Defendants, as described below, have a custom or policy of denying appropriate medical care to individuals in police custody.   Specifically, no fewer than ten (10) of Municipal Defendants' employees or officers failed to adequately care for Mr. Evans.  By the conduct described above, Defendants acted intentionally, or with deliberate or callous indifference, to Plaintiff's right to substantive and procedural due process and care.

34.        Defendants knew their conduct in refusing to care for Mr. Evans by having him sedated adequately for excited delirium violated Plaintiff's right to substantive and procedural due process.  Defendants acted intentionally, or with deliberate or callous indifference to Plaintiff's rights.

35.        Defendants knew that their conduct in placing Mr. Evans in the prone position violated Plaintiff's right to substantive and procedural due process.  Defendants acted intentionally, or with deliberate or callous indifference to Plaintiff's rights.

36.        Defendants knew that their actions in denying proper medical care to Mr. Evans constituted a grave risk of harm to Plaintiff's health and well-being.  Defendants had actual and constructive knowledge of the risk of harm in denying Plaintiff accurate medical care.   Defendants could have taken easily available measures to address this risk of harm.

37.        At the time of the events described above, the individual Defendants were acting under color of the laws and regulations of the State of Texas and in the course and scope of their employment for the City.

38.       A pattern of prior incidents of failing to provide adequate medical care plagues the City of Dallas.  In the past five years, approximately nine federal lawsuits were filed in the United States District Court for the Northern District of Texas against the City based on various departments within the City's failure to provide medical care or adequate medical care to police detainees.  Upon information and belief, the City has received numerous other denial of medical care complaints over the last five years that were not necessarily filed in a court of law and were either dealt with internally or not addressed at all.  Such complaints are not available to Plaintiffs until discovery commences.

39.       During all relevant times, the Dallas City Council was the City's final policy maker regarding the conduct of its employees and had actual or constructive knowledge of the unconstitutional policy of tolerating its employees that do not provide adequate necessary medical attention to those who are in custody.  The City Council would have known of the unconstitutional policy had it properly exercised its responsibilities as policymaker.  Instead, the Dallas City Council has routinely ignored statistics regarding not only police misconduct but the misconduct and adequate care provided by other employees of the City of Dallas, including statistics regarding the propensity to deny police detainees necessary medical care.   The City of Dallas has failed to take appropriate action regarding constitutional violations, despite, according to a July 15, 2015 article in *The Wall Street Journal,* paying out a total of $6.9 million dollars to victims of police misconduct between 2010 and 2014.  The article goes on to state,

"Dallas paid out $3.4 million in misconduct cases in 2014, compared with just $200,550 in 2010." Similarly, *The Dallas Morning News* reported in May, 2015

"Since 2011, the Dallas City Council has approved 10 six-figure settlements or verdicts for lawsuits against the police department, according to city records.   Those payouts have added up to about $6 million."

### *Plaintiffs Damages Against All Defendants for Failure to Provide adequate medical care in a timely manner.*

40.      As a direct result of these acts, Mario Evans suffered immensely during his last few minutes of life.  Mr. Mario Evans was deprived of his constitutional rights, all to his damage.

41.      Accordingly, Plaintiffs seek compensatory damages from all Defendants, jointly and severally, and punitive damages from the Individual Defendants, pursuant to Section 1983, in an amount to be determined by the jury.

42.      From all Defendants, jointly and severally, Plaintiffs request attorney's fees, costs, disbursements, and pre and post judgment interest in the highest amount allowable by law.

## VI
## CAUSE OF ACTION AGAINST JAMES PETER FLORES FOR HOMICIDE

43.      Pursuant to Texas State law, Plaintiffs pleads a cause of action against Flores for homicide.  The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged, for all purposes, and incorporated herin with the same force and effect as if set forth verbatim herein.

44.  Upon arriving at the scene on or about February 28, 2014 – March 1, 2014, Flores willfully, intentionally, knowingly, or recklessly made contact with Mario Evans when Mario Evans was handcuffed and on the floor of the Cowboy Lounge.

45.  Patient health management rests with the highest medical authority on the scene, Paramedic Flores was on the scene.

46.  No medication was administered to Mario Evans, when it was obvious that Mr. Evans was in an excited delirium state.

47.  Flores, with the assistance of others placed Mr. Evans on the gurney in the prone position.

48.  Flores, with the assistance of others strapped Mr. Evans to the gurney in the prone position.

49.  Flores, along with assistance of others lifted and loaded Mr. Evans into the ambulance while being strapped to the gurney in the prone position.

50.  Flores knew or should have known that Mr. Evans was in a state of Excited Delirium.

51.  Flores noticed Mr. Evans body go limp, while being transported to Parkland Memorial Hospital.

52.  Flores, with the assistance of others had to remove the straps on the gurney to flip Mr. Evans over and to begin CPR.

53.  Flores, allowed Mr. Evans to be without oxygen to his brain for several minutes because he was put in the prone position on the gurney.

54.     Flores allowed Mr. Evans to die due to the bad decision that Flores when he placed Mr. Evans face down on the gurney.

55.     Flores is not entitled to official immunity from suit because Flores was not performing a discretionary duty within the scope and course of Flores' employment as a Paramedic with BioTel, Inc. and the City of Dallas.

56.     Flores is not entitled to official immunity from suit because Flores was not acting in good faith in placing Mario Evans in the prone position, the clear facts and circumstances existed at the time of the arrest to show that Mario Evans was suffering from Excited Delirium, a medical emergency, and not breaking any laws.  Flores decision to place Mr. Mario Evans in the prone position was unwarranted and unjustified.

57.     Flores is not entitled to official immunity from suit, or this Action, because Flores was acting within the course and scope of Flores' authority as Paramedic on the scene.

58.     As a direct and proximate result of these circumstances, Plaintiffs experienced actual damages in an amount in excess of the minimum jurisdictional limits of this Court to be determined by the jury.

59.     Accordingly, Plaintiffs seeks compensatory and punitive damages from Flores in an amount to be determined by a jury.

## VII.
## CAUSE OF ACTION AGAINST KELLY BRENDAN SWINDLE FOR HOMICIDE

60.     Pursuant to Texas State law, Plaintiffs pleads a cause of action against Flores for homicide.  The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

Plaintiffs Original Complaint                    Page 11

61.     Upon arriving at the scene on or about February 28, 2014 – March 1, 2014, Swindle willfully, intentionally, knowingly, or recklessly made contact with Mario Evans when Mario Evans was handcuffed and on the floor of the Cowboy Lounge.

62.     Patient health management rests with the highest medical authority on the scene, Paramedic Swindle was on the scene.

63.     No medication was administered to Mario Evans, when it was obvious that Mr. Evans was in an excited delirium state.

64.     Swindle, with the assistance of others placed Mr. Evans on the gurney in the prone position.

65.     Swindle, with the assistance of others strapped Mr. Evans to the gurney in the prone position.

66.     Swindle, along with assistance of others lifted and loaded Mr. Evans into the ambulance while being strapped to the gurney in the prone position.

67.     Swindle knew or should have known that Mr. Evans was in a state of Excited Delirium.

68.     Swindle was driving the ambulance with Flores noticed Mr. Evans body go limp, while being transported to Parkland Memorial Hospital.

69.     Swindle allowed Mr. Evans to die due to the bad decision that Swindle made when he placed Mr. Evans face down on the gurney.

70.     Swindle is not entitled to official immunity from suit because Swindle was not performing a discretionary duty within the scope and course of Swindle's employment as a Paramedic with BioTel, Inc. and the City of Dallas.

71.     Swindle is not entitled to official immunity from suit because Swindle was not acting in good faith in placing Mario Evans in the prone position, the clear facts and circumstances existed at the time of the arrest to show that Mario Evans was suffering from Excited Delirium, a medical emergency, and not breaking any laws.  Swindle's decision to place Mr. Mario Evans in the prone position was unwarranted and unjustified.

72.     Swindle is not entitled to official immunity from suit, or this Action, because Swindle was acting within the course and scope of Swindle's authority as Paramedic on the scene.

73.     As a direct and proximate result of these circumstances, Plaintiffs experienced actual damages in an amount in excess of the minimum jurisdictional limits of this Court to be determined by the jury.

74.     Accordingly, Plaintiffs seeks compensatory and punitive damages from Swindle in an amount to be determined by a jury.

## VIII.
## CAUSE OF ACTION AGAINST MUNICIPAL DEFENDANTS: VIOLANTION OF PLAINTIFF'S 14TH AMENDMENT RIGHTS PURSUANT TO SECTION 1983

75.     Plaintiffs pleads a cause of action against Municipal Defendants for violation of Plaintiff's Fourteenth Amendment right guaranteeing substantive and procedural due process pursuant to 42 U.S.C. § 1983.  The allegations contained in all of the paragraphs

of this Petition are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

76.     Municipal Defendants have consistently failed to properly train their employees, including but not limited to paramedics to (1) recognize and (2) provide assistance to detainees needing medical assistance, resulting in a custom or policy of denying appropriate medical care to individuals who are in custody.   Specifically, no fewer than eight (8) officers or employees of Municipal Defendants denied Mario Evans the proper medical attention that he needed.  Such deliberate or callous indifference was caused by Municipal Defendants' failure to train paramedics and employees for the City or elsewhere to provide appropriate medical care to individuals in police custody and/or being transported to a hospital.  By the conduct described above, Municipal Defendants acted intentionally, or with deliberate or callous indifference, to Plaintiff's right to substantive and procedural due process.

77.     Municipal Defendants knew that their conduct in failing to train its Paramedics and other employees, to recognize and provide medical attention to those that have been detained and experiencing medical emergencies resulted in the Individual Defendants and multiple other employees of Municipal Defendants refusing to properly medicate and evaluate and place Mario Evans in the position on the gurney, violated Mario Evans right to a substantive and procedural due process.   Individual Defendants, and multiple other employees and/or officers of Municipal Defendants acted intentionally, or with deliberate or callous indifference to Plaintiff's rights.

78.     Municipal Defendants knew that their actions in failing to appropriately train paramedics and other employees to recognize medical emergencies and provide appropriate medical attention would result in a denial of medical care to Plaintiff, and others like Plaintiff, which constituted grave harm to Plaintiff.  Individual Defendants, and multiple other Municipal Defendants' employees had actual and constructive knowledge of the risk of harm in denying Plaintiff medical care.  Individual Defendants, and multiple other Municipal Defendants' employees could have taken easily available measures to address this risk of harm.

## IX.
### CAUSE OF ACTION AGAINST CITY OF DALLAS FIRE-RESCUE DEPARTMENT AND BIOTEL

79.     At the time of the events described above, the individual Defendants, City of Dallas Fire-Rescue Department was and is currently managed by BioTel.  BioTel began operations in January, 1975 and Dallas Fire-Rescue was the first group to use BioTel.  Both BioTel and the leaders of Dallas Fire-Rescue developed and implemented a new paramedic training program.  BioTel EMS system includes 14 fire departments in Dallas County.  All of Dallas fire-Rescue paramedics are trained by BioTel.   All Dallas Fire-Rescue paramedics are trained to recognize patients who are experiencing excited delirium.  BioTel is responsible for writing the guidelines for EMT's throughout the State of Texas and other states across The United States.

80.     BioTel's training materials that are handed out and taught to each paramedic, that under excited delirium, Advanced Level, as Mario Evans was experiencing, states:  DO NOT restrain the patient in the prone position or interfere with ventilation in any way.

81.    Mario Evans, which was experiencing Excited Delirium, could have been medically treated at the scene with a simple injection of Benzodiazepine, Medazolam or Ketamine which would have calmed him down so that he could be transported directly to Parkland Memorial Hospital for evaluation, however the paramedics failed to do this.

**X.**
**CAUSE OF ACTION AGAINST PARKLAND MEMORIAL HOSPITAL**

82.    While in route to Parkland Memorial Hospital, Mario Evans stopped breathing for several minutes.    Flores and two officers attempted to cut the straps, flip him and start CPR.    Mario Evans died while in transport to Parkland Memorial Hospital.

83.    Once arriving at Parkland Memorial Hospital, several nurses, physicians and others staff members continued to work on Mario Evans for approximately another 10 hours, which included cutting/mutilating his body in an attempt to bring him back. Some of these cuts were along the sides of Mario Evans chest and underarm towards his buttocks.  One incision was made directly through a cut in which Mario Evans received while at Cowboy Lounge.    This incision destroyed any DNA evidence that might have been able to determine the source of the original cut.

**XI.**
**DAMAGES FOR MENTAL ANGUISH**

84.    As a consequence of the foregoing facts and the willful and malicious nature of the wrongs Defendants committed against Plaintiffs, Plaintiffs have suffered and will suffer past, present and future severe mental anguish, for which Plaintiffs pleads to recover at trial.  The damages for said mental anguish exceed the minimum jurisdictional limit of this Court.

## XII.
## PUNITIVE DAMAGES

85.          Plaintiffs further pleads that Flores and Swindle are liable for exemplary damages

because Flores and Swindle acted recklessly and/or with callous indifference towards

Plaintiff Mario Evans.  As such Defendants are liable for exemplary damages under

Section 1983 and/or the intentional torts Defendants committed against Mario Evans.

## XIII.
## JURY DEMAND

86.          Plaintiffs demand that this Court empanel a lawful jury to hear this case.

## XIV.
## REPORTER DEMAND

87.          Demand is hereby made that the Official Court Reporter for this Court perform all

the duties of the office, as set forth in Section 52.046 of the Government Code of the

State of Texas, and as set forth in Rule 13 of the Rules of Appellate Procedure, including

reporting all testimony and trial proceedings, voir dire examinations and jury arguments.

## XV.
## CONDITIONS PRECEDENT

88.          All conditions precedent to all relief being sought by Plaintiffs in the above-

referenced Action have been met, performed, occurred and/or been waived.

### PRAYER

          **WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that Defendants

be cited to appear and to answer herein and that upon final hearing, the Court enter

judgment in favor of Plaintiffs against Defendants, jointly and severally, for

compensatory damages, reasonable attorneys' fees, reasonable paralegal fees, costs of

court and pre and post judgment interest at the highest rate allowed by law, and for

punitive damages, jointly and severally, against the Individual Defendants, and for such

other and further relief, general or special, at law or in equity, to which Plaintiff may be

justly entitled.

Respectfully submitted,

_____

Anthony Eiland
State Bar Card No.: 24055441
The Eiland Law Firm
5787 S. Hampton Road, Ste. 270
Dallas, Texas 75232
(469) 301-2400
(469) 301-2400 – fax
Anthony@TheEilandFirm.com

_____

Nigel Redmond
State Bar Card No.: 24058852
The Nigel Redmond Law Firm
5787 S. Hampton Road, Ste. 270
(469) 301-2400
(469) 301-2400 – fax
Nigel@NigelRedmondLaw.com

**ATTORNEY FOR PLAINTIFFS**