IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VONIOR EVANS AND WANDA BRYANT, INDIVIDUALLY AND AS PARENTS OF MARIO EVANS, DECEASED, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:16-CV-0561-L |
| THE CITY OF DALLAS, et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Defendant City of Dallas's Rule 12(b)(6) Motion to Dismiss (Doc. 16), filed July 6, 2016; Defendant Dallas Fire-Rescue Department's Rule 12(b)(6) Motion to Dismiss (Doc. 17), filed July 6, 2016; and Defendants James Peter Flores and Kelly Brendan Swindle's Motion to Dismiss (Doc. 20), filed July 27, 2016. No response was filed. After careful consideration of the motions, briefs, pleadings, and applicable law, the court **grants** Defendant City of Dallas's Rule 12(b)(6) Motion to Dismiss (Doc. 16); **grants** Defendant Dallas Fire-Rescue Department's Rule 12(b)(6) Motion to Dismiss (Doc. 17); and **grants** Defendants James Peter Flores and Kelly Brendan Swindle's Motion to Dismiss (Doc. 20).

## I.      Factual Background

Plaintiffs Vonior Evans and Wanda Bryant, individually and as the parents of Mario Evans, Deceased ("Evans"), filed this action pursuant to 42 U.S.C. § 1983 and state law against the City of Dallas (the "City"), the City of Dallas Fire-Rescue Department d/b/a City of Dallas Emergency Ambulance Service ("DF-R"), and DF-R paramedics James Peter Flores ("Flores") and Kelly

Brendan Swindle ("Swindle") (collectively, "the EMTs").[1]   The court now sets out the facts upon which it relies in deciding the pending motions to dismiss, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiffs.   *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The facts are drawn from Plaintiffs' Original Complaint ("Complaint"), which is the live pleading.   *See* Compl. (Doc. 1).

On or about February 28, 2014, Evans, along with his two brothers and a friend, arrived at the Cowboy Lounge in Dallas, Texas.   Evans consumed alcohol, smoked marijuana, and sniffed cocaine.   After midnight on March 1, 2014, Evans's behavior became erratic, and he jumped onto the stage, started to sing and shout, and eventually disrobed.   Evans then either jumped or fell off the stage and began arguing with other patrons.   Emergency 911 was called, and the City of Dallas Police Department responded.   Evans refused to comply with the police officers and became physically aggressive.   One of the police officers tased Evans, who continued to resist.   Officers eventually gained control of Evans and handcuffed him.   DF-R EMTs Flores and Swindle then arrived and evaluated Evans, who was still combative, sweating profusely, and in an excited "delirium state."   Compl. ¶ 17.   DF-R administered no medical attention to Evans while at the Cowboy Lounge.   The EMTs, with the help of police officers, put Evans on a gurney face down or in a prone position. The EMTs then strapped Evans to the gurney and put him into the ambulance. En route to the hospital, Flores noticed that Evans was limp and no longer breathing, and he asked police officers in the ambulance for assistance with CPR.   The police officers and Flores had to remove the restraining straps before they could begin CPR.   Once the straps were removed, the

---

[1] Plaintiffs also sued Biotel, Inc. and Parkland Memorial Hospital.  On January 23, 2017, the court dismissed all claims against Biotel, Inc. for failure to effect service under Federal Rule of Civil Procedure 4(m).  *See* Order (Doc. 23).  On February 21, 2017, Plaintiffs stipulated to the dismissal with prejudice of all claims against Defendant Parkland Memorial Hospital.  *See* Pls.' Stip. of Dismissal (Doc. 24).

police officers and Flores turned Evans over onto his back and began to administer CPR. Evans died while being transported to Parkland Memorial Hospital.

With respect to the City, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment due process rights, alleging that the EMTs failed to provide Evans adequate medical care, that the City had a custom or policy of denying medical care to persons in police custody, and that the City failed to properly train the EMTs on providing adequate medical care to persons in police custody. Plaintiffs bring claims against the EMTs pursuant to 42 U.S.C. § 1983, alleging they deprived Evans of his Fourteenth Amendment due process rights when they failed to render appropriate medical care, and that their actions were intentional, or deliberately indifferent to Evans's constitutional rights. Plaintiffs also bring state law claims against the EMTs for homicide. Plaintiffs bring claims against DF-R under 42 U.S.C. § 1983 for its alleged failure to properly train its paramedics on providing adequate medical care to persons in police custody. Plaintiffs seek compensatory and punitive damages, attorney's fees, and costs.

## II.    Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier,* 509 F.3d at 675; *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker*

*Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th

Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim

when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint

are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556

U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.

*R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not

evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has

pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355

F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion,

its task is to test the sufficiency of the allegations contained in the pleadings to determine whether

they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty*

*Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th

Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial

of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof

to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III.    Analysis

### A.    The City of Dallas's Motion to Dismiss

The City moves to dismiss the Complaint, arguing that Plaintiffs fail to plead facts from

which the court can make a reasonable inference of subjective deliberate indifference to Evans's

serious need for medical care on the part of the EMTs or any other City employee, and fail to allege adequately a plausible municipal liability claim based on a City custom or policy of denying medical care to persons in police custody, or failing to train paramedics in providing medical care to those in custody.  Plaintiffs have failed to file any response in opposition to the City's motion.  For the reasons stated below, the court concludes that the City's motion to dismiss Plaintiffs' § 1983 claims should be granted.

### 1.      Municipal Liability

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability.  *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).  Official policy is defined as :

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy.   Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam).  A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred

because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). A plaintiff must assert facts that the governmental entity through its deliberate conduct was the "moving force behind the injury alleged" and must allege facts showing, or those from which the court may reasonably infer, a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. at 404.

To hold a municipality liable under § 1983 because of a policy of inadequate training, a plaintiff must set forth allegations that (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Baker*, 75 F.3d at 200.

### 2.      Section 1983 Cause of Action for Denial of Medical Care

An arrestee who has not yet been booked is treated the same as a pretrial detainee for purposes of his Fourteenth Amendment right to adequate medical attention. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472-73 (5th Cir. 1996). A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to adequate medical care and can bring an action under § 1983 for a denial of that right if a government official has "subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (A pretrial detainee has a "clearly established Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs."). Deliberate indifference "is an extremely high standard[]" and requires that a plaintiff "show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any

similar conduct that would clearly evince a wanton disregard for any serious medical needs."
*Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation
marks and citation omitted).  Negligence, or even gross negligence, on the part of the government
official does not rise to the level of deliberate indifference.  *See Hare*, 74 F.3d at 645-46.

### 3.     The City's Motion to Dismiss

As already stated, Plaintiffs did not file any opposition to the City's motion to dismiss.  The
court, therefore, has undertaken the job of analyzing the City's arguments, treating them as though
they have been opposed.  Viewing the well-pleaded allegations in the Complaint as true and drawing
all reasonable inferences in favor of Plaintiffs, the court determines that Plaintiffs have failed to
allege adequately: (i) a Fourteenth Amendment violation based on the EMTs' alleged conduct in
responding  to the Emergency 911 call from the Cowboy Lounge on March 1, 2014; (ii) a custom
or policy of the City that resulted in a deprivation of Plaintiffs' constitutional rights under the
Fourteenth Amendment; or (iii)  Evans's injuries were caused by a municipal policymaker who was
deliberately indifferent in adopting unconstitutional training policies.  *See generally Monell*, 436
U.S. at 690-91; *Bryan Cnty.*, 520 U.S. at 404; *City of Canton*, 489 U.S. at 388-89; and *Webster*, 735
F.2d at 841.

More specifically, the court agrees with the City's argument that Plaintiffs have failed to
plead facts from which this court can make a reasonable inference that the EMTs had subjective
knowledge of a substantial risk of serious harm to Evans and acted with deliberate indifference to
his serious medical needs.  The Complaint contain conclusory allegations about risk of harm and
deliberate indifference (*see* Compl. 7).  A complaint must set forth "more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555 (citation omitted).  Plaintiffs fail to allege facts showing that the EMTs refused to treat Evans, ignored any complaints, intentionally treated him incorrectly, or engaged in any conduct that would rise to the level of "wanton disregard" to a serious medical need.  *Domino*, 239 F.3d at 756.  At most, Plaintiffs allegation is that the EMTs made bad or negligent decisions concerning the treatment of Evans.  *See* Compl. 9-13.  As already noted, negligence, or even gross negligence, on the part of the government official does not rise to the level of deliberate indifference.  *See Hare*, 74 F.3d at 645-46.  As such, the court determines that Plaintiffs have failed to allege a plausible claim that Evans's Fourteenth Amendment due process rights were violated.  Absent an underlying constitutional violation, Plaintiffs have no claim against the City.

Further, Plaintiffs' allegations are about this one incident on March 1, 2014, that they allege resulted in a constitutional deprivation, from which Plaintiffs ask the court to infer that the City had a *de facto* policy or customary practice of allowing or providing inadequate medical care to persons in police custody.  Pleadings pertaining to individual actions taken in this specific case do not suffice to establish a pattern necessary for municipal liability based on custom or practice.  *See Bennett,* 728 F.2d at 768 n.3.

Following *Twombly* and *Iqbal*, Plaintiffs have the burden to allege facts that show they are entitled to relief.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009).  Well-pled facts that merely permit an inference of *possible* misconduct do not show entitlement to relief as required by Rule 8(a)(2).  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (relying on *Iqbal*).  Without enough facts to permit the inference of an official custom or policy that resulted in Plaintiffs' alleged injuries, their claims against the City necessarily fail.  *See McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009) (finding that Plaintiffs must plead facts showing that a policy or custom

existed to state a claim, and affirming dismissal of municipal liability claims because the complaint alleged insufficient facts).

The court similarly determines that Plaintiffs' allegations based on a failure to train are insufficient to state a plausible claim for relief.  Plaintiffs allege the City is liable under § 1983 because it has "consistently failed to properly train [its] employees, including but not limited to paramedics to (1) recognize and (2) provide assistance to detainees needing medical assistance, resulting in a custom or policy of denying appropriate medical care to individuals who are in custody."  Compl. ¶¶ 75-76.  First, the court agrees with the City's argument that these allegations are insufficient under *Iqbal* and *Twombly*, as they are merely a "formulaic recitation of the elements of the cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Second, Plaintiffs fail to allege any facts from which the court can infer that the policymakers were deliberately indifferent to a known or obvious risk that the alleged customs referenced in the Complaint would result in a deprivation of any rights.  *See City of Canton*, 489 U.S. at 388-89 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84) (1986) (plurality) ("'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers.")).

Third, the court also agrees with the City that Plaintiffs fail to plead facts from which the court may reasonably infer that the "City's final policymakers were even aware of any systemic deficiencies in paramedic training, much less that the City's final policymakers deliberately chose a deficient course of action from the alternatives available."  Def. City's Mot. to Dismiss 9.

Finally, other than speculation and conclusory language, Plaintiffs fail to plead any facts that would allow the court to draw a rational inference that the EMTs were insufficiently trained with

respect to providing appropriate medical attention, and identify no specific deficiencies in paramedic training.

In sum, the court determines that Plaintiffs' pleadings fall short of adequately alleging an underlying Fourteenth Amendment violation by the EMTs. As such, Plaintiffs have no claim against the City. Even had Plaintiffs alleged a plausible constitutional violation by the EMTs, Plaintiffs fail to allege adequately a plausible claim against the City based on a custom or policy of denying medical care to those persons in its custody or a custom or policy of a failure to train paramedics in providing medical care to those in its custody. For these reasons, and absent any opposition brief by Plaintiffs, the court will grant the City's motion to dismiss.

**B.     DF-R's Motion to Dismiss**

Plaintiffs also sue DF-R under 42 U.S.C. § 1983 for its alleged failure to properly train its paramedics on providing adequate medical care to persons in police custody. DF-R argues that the claims against it must be dismissed because it is not a jural entity amenable to suit. Plaintiffs have not filed a response in opposition to the motion.

An entity's capacity to sue or be sued is "determined by the law of the state in which the district court is held." *Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)). An agency or department may not be sued unless it "enjoy[s] a separate legal existence." *Id.* (quoting *Mayes v. Elrod,* 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)). Therefore, "[u]nless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or to be sued." *McGilbert v. Montgomery Cnty. Sheriff's Dep't,* 2013 WL 655706, at *2 (S.D. Tex. Feb. 20, 2013) (quoting *Darby,* 939 F.2d at 313). "The burden of showing that the city or county department has the capacity

to be sued rests on the plaintiff." *Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014) (Boyle, J.).

> In support of its motion to dismiss, DF-R argues that:

> Texas law grants the City the authority to organize a fire department. *See* Tex. Loc. Gov't Code Ann. Section 342.011.  The Dallas City Charter (the "Charter") in turn reserves to the City itself the power to sue and to be sued. *See* Charter, ch. II, § 1(2) ("The City of Dallas . . . shall have the following powers . . . [t]o sue and be sued."). The Charter nowhere grants DF-R the power to sue or be sued.  Accordingly, the City has not conferred jural existence on DF-R or otherwise authorized the department to engage in litigation as a separate independent entity.

Def. DF-R's Mot. to Dismiss 3-4 (Doc. 17).

Having considered the pleadings, DF-R's arguments in support of dismissal, and applicable law, the court  determines that Plaintiffs have failed to meet their burden of alleging that the City has granted DF-R the power to sue or be sued as a separate jural entity.  Accordingly, the court grants DF-R's motion to dismiss.

### C.      The EMT's Motion to Dismiss

Plaintiffs bring claims against the EMTs pursuant to 42 U.S.C. § 1983, alleging deprivation of Evans's Fourteenth Amendment due process rights, as well as state law claims for homicide.  The EMTs move to dismiss all claims.  In support of dismissal of Plaintiffs' § 1983 claims, the EMTs argue that Plaintiffs have failed to plead facts from which this court can make a reasonable inference that the EMTs had subjective knowledge of a substantial risk of serious harm to Evans and acted with deliberate indifference to his serious medical needs.  For the reasons already set forth by the court in granting the City's motion to dismiss on these same grounds, the court will grant the EMTs motion to dismiss on this basis as well.  *See supra* Sec. III.A.3.

**Memorandum Opinion and Order - Page 12**

The EMTs also move to dismiss Plaintiff's state-law claim for homicide.  To the extent Plaintiffs purport to assert a cause of action against the EMTs for homicide under Texas law, the claim necessarily fails.  Homicide is a criminal offense under § 19.01 of the Texas Penal Code.  The Texas Penal Code "does not create private causes of action."  *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citation omitted); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, pet. denied) (citation omitted).  As no civil cause of action exists for violation of a state criminal statute, Plaintiffs have failed to state a claim upon which relief can be granted on the "homicide" claim, and the court will dismiss it.

Further, to the extent Plaintiffs are seeking to assert a claim for damages under Texas Civil Practice and Remedies Code § 71.004(c), also known as the Texas Wrongful Death Statute, the EMTs move to dismiss the Complaint.  The Texas Wrongful Death Statute provides:

> If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all of those individuals.

Tex. Civ. Prac. & Rem. Code § 71.004(c).  The Complaint alleges that Evans died on March 1, 2014. Compl. ¶ 30.  This lawsuit was filed on February 29, 2016.  As Plaintiffs did not begin this action against the EMTs within three calendar months after Evans's death, his executor or administrator must bring and prosecute this action.  Accordingly, in the alternative to granting the EMT's motion to dismiss Plaintiffs' state-law homicide claim under section 101.106(f) of the TTCA, the court grants the EMTs' motion to dismiss on this basis as well.

Finally, to the extent Plaintiffs' Complaint can be liberally construed as asserting a cause of action under the Texas Survival Statute, these claims fail, as such claims must be brought by the personal representative of the estate of the deceased.  *See* Tex. Civ. Prac. & Rem. Code § 71.021(b)

("A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person."); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005) ("[I]n a survival action, the decedent's estate has a justiciable interest in the controversy sufficient to confer standing."). Plaintiffs bring this lawsuit individually and as parents of Evans. They do not allege that they are bringing this lawsuit as the personal representatives of Evans's estate. As such, any claim under the Survival Statute is dismissed for lack of standing.

### D.     Opportunity to Amend

Plaintiffs have filed no response, and they have not requested leave to amend their pleadings in the event the court determines that they failed to state a claim upon which relief can be granted. Moreover, the provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted).

In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). As Plaintiffs have not responded to the motions to dismiss, they concede the strength of Defendants' motions, have pleaded their best case, or are not interested in prosecuting this case. In any event, whatever the reason for not filing responses to any of the motions to dismiss, Plaintiffs should not be allowed to

amend their pleadings some seven months after the latest response was due. Allowing an amendment of the pleadings would unnecessarily delay the resolution of this action and effectively award Plaintiffs for dilatory conduct.

## IV.     Conclusion

For the reasons herein stated, the court **grants** Defendant City of Dallas' Rule 12(b)(6) Motion to Dismiss (Doc. 16), **grants** Defendant Dallas Fire-Rescue Department's Rule 12(b)(6) Motion to Dismiss (Doc. 17), and **grants** Defendants James Peter Flores and Kelly Brendan Swindle's Motion to Dismiss (Doc. 20). The court **dismisses with prejudice** Plaintiffs' federal and state law claims against Defendants. As required, a final judgment will issue by separate document pursuant to Federal Rule of Civil Procedure 58.

**It is so ordered** this **13th day** of **March, 2017.**

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 15**